UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT SATAGAJ, | ) | |
| | ) | |
| Plaintiff, | ) | DOCKET NO. |
| | ) | |
| -against- | ) | |
| | ) | **COMPLAINT** |
| WELLS FARGO BANK, N.A.., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | NOVEMBER 30, 2016 |

Plaintiff, ROBERT SATAGAJ, by and through his attorneys, alleges of his own knowledge and conduct and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff brings this action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et. seq. ("FLSA") and Connecticut Wage and Hour Laws. (CWHL") Conn. State Statutes, section 31-76(b) and (c). in connection with defendant WELLS FARGO BANK's ("WFB") violation of its statutory obligations to pay Plaintiff compensation for all off-the-clock time and overtime wages, as a non-exempt employee, for work in excess of 40 hours per week, at a rate of 1.5 times his regular rate of pay.

2.      Plaintiff also seeks legal and equitable relief for wrongful discharge and breach of the implied covenant of good faith and fair dealing, derived from WFB's violation of public policy.

1

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331

because this action involves the Fair Labor Standards Act, 29 U.S.C. § 201et seq., a

Federal Statute.   As to State law claims under CWHL and common law, this Court

has supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in this District under 28 U.S.C. § 1391 (b) and (c) because a

substantial part of the acts or omissions giving rise to this action occurred in this

District and WFB is subject to personal jurisdiction in this District.

## THE PARTIES

5.      WFB is a national banking association chartered under the laws of the

United States.

6.      WFB maintains its principal offices located in Sioux Falls, South Dakota.  It

conducts transactional banking business throughout Connecticut.

7.      Plaintiff, ROBERT SATAGAJ, is a resident and citizen of Portland, CT

06480.

## FACTUAL ALLEGATIONS

8.      Wells Fargo & Company is an American international banking and financial

services holding company and is the world's second largest bank by market

capitalization and the third largest bank in the U.S. by assets. The firm's primary

U.S. operating subsidiary is WFB.

9.    Plaintiff was employed by WFB from February 2014 to February 2016, as a Personal Banker Registered 2, in the Madison, CT branch.

10.   Plaintiff was a non-exempt employee with a starting base pay of $23.07 per hour, which equals approximately $48,000.00 per annum.

11.   Plaintiff's job responsibilities included building, maintaining and ensuring long term relationships with existing and new customers; proactively identifying and offering products and services that address their financial needs, based upon customer financial priorities; and recommending investments and insurance.

12.   At all relevant times, WFB operated and controlled an enterprise engaged in commerce, with an annual gross volume of business exceeding $500,000.00.

13.   At all times material and relevant herein, WFB was the employer of Plaintiff and possessed the authority and power to hire or terminate Plaintiff; control Plaintiff's work schedules and conditions of employment; determined the rate and method of the payment of wages; determined Plaintiff was non-exempt; determined overtime policy; determined compensation day policies and kept and/or had unrestricted access to records regarding Plaintiff's employment.

14.   At all relevant times, Plaintiff was an employee of WFB within the meaning of 29 U.S.C. §§201 et. seq.

15.   At all relevant times, Plaintiff was an employee of WFB within the meaning of CWHL and the supporting Connecticut Department of Labor regulations.

16.     During the applicable statutory period, Plaintiff was required by WFB and did regularly work over 40 hours per week.

17.     During the applicable statutory period, Plaintiff worked at least 60 hours per week.

18.     During the applicable statutory period, Plaintiff was required by WFB management to falsify time records to reflect less hours than he actually worked.

19.     At all relevant times, Plaintiff worked in the manner described above and WFB encouraged, instructed, and required him to work in this manner to satisfy his quotas.

20.     WFB intentionally and knowingly instructed Plaintiff to work in this manner, to circumvent the applicable FLSA overtime pay requirements.

21.     WFB intentionally and knowingly instructed Plaintiff to work in this manner, to circumvent the applicable CWHL overtime pay requirements.

22.     During the applicable statutory period, Plaintiff was not paid overtime compensation by WFB, for all hours worked each week, in excess of 40 hours.

23.     Upon information and belief, WFB never posted a notice explaining the minimum hourly wage and overtime pay rights provided by FLSA in any area of its business facility where Plaintiff was employed, in violation of 29 C.F.R. §516.4.

24.     At all times material and relevant herein, WFB failed to keep full and accurate records of Plaintiff's hours and wages, in violation of 29 C.F.R. §§ 516.5, 516.6, and CWHL.

25.     Because WFB willfully violated the FLSA, as aforesaid, a three (3) year statute of limitations applies to such violation, pursuant to 29 U.S.C. § 255.

26.     WFB's wrongful acts, omissions and/or commissions, as alleged herein, were not made in good faith or in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation by the U.S. Department of Labor and/or the Connecticut Department of Labor, or any administrative practice or enforcement policy of such departments.

27.     WFB's violations of the above-described federal and state wage and hour statutes and regulations were willful, arbitrary, unreasonable and/or in bad faith.

28.     WFB's failure to pay Plaintiff for off-the-clock work and overtime compensation, in violation of federal and state law, has been willful and was not the result of a good faith contest or dispute.

FIRST CLAIM FOR RELIEF (FLSA)

29.     Plaintiff repeats and realleges all preceding paragraphs of the Complaint, as if fully set forth herein at length.

30.     WFB failed to compensate Plaintiff for all hours worked, each work week.

31.     For example, for the pay period 04/06/14 to 04/19/14, Plaintiff worked 120 hours, but only received wages for 78.59 hours in the amount of $1,813.62 ($23.07 per hour).

32.     WFB failed to compensate Plaintiff for all hours worked per week, in excess of forty (40).

33.     WFB failed to compensate Plaintiff at a rate of 1.5 times his regular rate of pay, for all hours in his work week in excess of 40.

34.     For example, for the pay period 01/10/16 to 01/23/16, Plaintiff worked 122 hours (60 + 62) and only received wages of $2308.00 for 80 hours of work. In addition to his regular rate of pay, Plaintiff was entitled to receive overtime compensation for 42 hours, at the rate of $43.27 ($28.85 x 1.5=$43.27) = $1817.34.

35.     WFB's overtime practices, as described herein, violated the FLSA.

36.     WFB's conduct and employment practices, as described herein, was/is willful, intentional, unreasonable, arbitrary and in bad faith.

37.     WFB has willfully and intentionally engaged in a persistent pattern and practice of violating the provisions of the FLSA, as described herein.

38.      Because WFB willfully violated the FLSA, as aforesaid, a three (3) year statute of limitations applies to each such violation, pursuant to 29 U.S.C. § 255.

39.      By reason of these unlawful acts, WFB has deprived Plaintiff of over time compensation in amounts to be determined at trial, together with such other

amounts for liquidated damages, prejudgment interest, attorney's fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF (CWHL)

40.   Plaintiff repeats and realleges all preceding paragraphs of the Complaint, as if fully set forth herein at length.

41.   WFB failed to compensate Plaintiff for all hours in a work week, in excess of forty (40).

42.   WFB failed to compensate Plaintiff at a rate of 1.5 times his regular rate of pay, for all hours in a work week in excess of 40.

43.   WFB's overtime practices, as described herein, violated CWHL.

44.   WFB's conduct and employment practices, as described herein, was/is willful, intentional, unreasonable, arbitrary and in bad faith.

45.   By reason of these unlawful acts, WFB has deprived Plaintiff of overtime compensation in amounts to be determined at trial, together with such other amounts for liquidated damages, prejudgment interest, attorney's fees, costs and other compensation pursuant to CWHL and the supporting Connecticut Department of Labor regulations.

## THIRD CLAIM FOR RELIEF (Wrongful Discharge)

46.     Plaintiff repeats and realleges all preceding paragraphs of the Complaint, as if fully set forth herein at length.

47.     During the relevant period, WFB offered consumer financial products and services, including savings and checking accounts, credit cards, debit and ATM cards and online banking services.

48.     WFB sought to distinguish itself in the marketplace as a leader in "Cross-selling" bank products and services to its existing customers.

49.     In its 2014 Annual Report to the U.S. Securities Exchange Commission, WFB stated that "we continue to maintain our solid customer relationships across the Company; with retail banking household cross-sell of 6.17 products per household (November 2014)…Our goal is eight products per household…"

50.     WFB aggressively pushed its employees, including Plaintiff, by imposing unreasonably high and unrealistic sales goals and quotas upon them, to open accounts, to increase their cross-sell numbers.

51.     WFB enforced its sales quotas by daily monitoring and reporting for each branch and each sales employee. Those failing to meet daily sales quotas were approached by management and often reprimanded and/or intimidated.

52.     WFB was aware, that in an attempt to meet the impossible cross-sell quotas imposed, some employees engaged in "simulated funding" by securing new accounts

that were fraudulently opened, unwanted, carried a zero balance or were simply a result of unethical and/or fraudulent business practices described below.

53.    Fraudulent practices included opening deposit accounts without consumers' knowledge or consent and then transferring funds from that customer's authorized accounts, to fund the authorized account.

54.    Another fraudulent practice was submitting applications for and obtaining credit cards for consumers without their knowledge and/or consent.

55.    Some WFB employees used email addresses, not belonging to consumers, to enroll them in online banking services without their knowledge and/or consent.

56.    WFB was also aware that some employees requested debit cards and created PIN numbers to activate them, without the customer's knowledge and/or consent.

57.    By opening deposit accounts without customer authorization and/or consent; in applying for and opening credit-card accounts using consumers' information without their knowledge or consent, and enrolling customers in online banking services without their knowledge and/or consent, WFB caused and was likely to cause substantial injury that was not reasonably avoidable, because it occurred without consumers' knowledge, and was not outweighed by countervailing benefits to consumers or competition.

58.    WFB performed an analysis to assess the scope of the of improper sales practices that occurred between May 2011 and July 2015. It concluded that WFB employees opened 1.53 million deposit accounts and 565,400 credit card accounts,

that may not have been authorized and that may have been funded through simulated funding, or transferring funds from customer accounts without their knowledge and/or consent.

59.     WFB illegally retaliated against employees, including Plaintiff, who refused to participate and engage in the fraudulent activity described above. Plaintiff and others were fired under the guise that they failed to meet their sales quotas.

60.     WFB terminated plaintiff on February 5, 2016 and a total of approximately 5300 employees during the relevant period of time.

61.     WFB used the termination of Plaintiff and other similarly situated employees, as a motivational tool to incentivize those employees who met the impossible quotas, to continue taking these illegal actions to increase cross-sell activity.

62.     In 2016, the Office of the Comptroller of the Currency, the Consumer Financial Protection Bureau (CFPB) ordered WFB to pay $185 million to settle charges that employees had fraudulently signed customers up for deposit and credit card accounts to meet sales quotas and receive incentive bonuses.

63.     The public policy of the State of Connecticut, as codified, makes it a class D felony for anyone to intentionally get another person's personal identifying information and use it for an unlawful purpose, including to get or attempt to get credit, goods, services, or medical information. Personal identifying information is defined as motor vehicle operator's license, Social Security, employee identification,

demand deposit, savings account, or credit card numbers or someone's mother's maiden name (CGS § 53a-129a).

64.     The public policy of the State of Connecticut, as codified by General Statutes Sec. 53a-128b provides that " Any person who makes or causes to be made, either directly or indirectly, any false statement in writing, knowing it to be false and with intent that it be relied on, respecting his identity or that of any other person or his financial condition or that of any other person, for the purpose of procuring the issuance of a credit card, violates this section and is subject to the penalties set forth in subsection (a) of section 53a-128i."

65.     The public policy of the State of Connecticut, as codified by General Statute, Sec. 53a-129 defines Identity Theft, as when "a person knowingly uses personal identifying information of another person to obtain or attempt to obtain money, credit, goods, services, property or medical information without the consent of such other person."

66.     The public policy of the State of Connecticut, as codified by General Statute, Sec. 53a-251 provides that a person is guilty of the computer crime of misuse of computer system information when: "(1) As a result of his accessing or causing to be accessed a computer system, he intentionally makes or causes to be made an unauthorized display, use, disclosure or copy, in any form, of data residing in, communicated by or produced by a computer system."

67.     By terminating Plaintiff for his refusal to engage in the fraudulent business practices described above, WFB relied upon an improper reason for dismissal, a reason whose impropriety is derived, in part, from violations of public policy recited in paragraphs 63-66 above.

68.     No statutory remedy exists under either federal or state law to redress the violation of public policy manifested by WFB's misconduct herein.

68.     As a direct and proximate result of WFB's wrongful and fraudulent conduct, as described herein, Plaintiff has suffered damages including, but not limited to, lost past and future wages; benefits; mental anguish; and emotional suffering.

69.     As a direct and proximate result of WFB's egregious wrongful and fraudulent conduct, as described herein, Plaintiff is entitled to the costs of this action, including reasonable attorney's fees.

70.     As a direct and proximate result of WFB's egregious wrongful and fraudulent conduct, as described herein, WFB is liable for punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and damages as follows:

(a)     A declaratory judgment that WFB's practices alleged herein violate the Fair Labor Standards Act, 29 U.S.C. § 201, et.seq. and attendant regulations at 29 C.F.R. § 516 et.seq.;

(b)     A declaratory judgment that WFB's practices alleged herein violate CWHL, attendant regulations and Connecticut common law principles.

(c)      Judgment for unpaid wages and overtime pay to which Plaintiff is lawfully entitled pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et.seq., and attendant regulations at 29 C.F.R. § 516 et.seq.;

(d)      Judgment for unpaid wages and overtime pay to which Plaintiff is lawfully entitled pursuant to CWHL, attendant regulations and Connecticut common law principles;

(e)      Judgment for liquidated damages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et. seq., and attendant regulations at 29 C.F.R. §516 et.seq., in an amount equal to the unpaid wages and overtime pay to which Plaintiff was lawfully entitled, but which was intentionally and wrongfully withheld by WFB.

(f)      Judgment for liquidated damages pursuant to CWHL.

(g)      Judgment for wrongful discharge, including damages for lost past and future wages; benefits; mental anguish; and emotional suffering in such amounts to be established at a trial of this action.

(h)      Judgment for punitive damages;

(i)      An order directing WFB to pay Plaintiff's reasonable attorney's fees and all costs connected with this action.

(j)      Such other and further relief as this Court may deem just and proper.

13

BROWN PAINDIRIS & SCOTT, LLP:

/s/*Bruce E. Newman*
747 Stafford Avenue
Bristol, CT 0601
Tel: (860) 583-520
Fax: (860)589-5780
Federal Bar No.:  12301
bnewman@bpslawyers.com


-and-

BLAU, LEONARD LAW GROUP, LLC
Steven Bennett Blau
Shelly A. Leonard
23 Green Street, Suite 303
Huntington, NY 11743
(631) 458-1010
sblau@blauleonardlaw.com
sleonard@blauleonardlaw.com

*Attorneys for Plaintiff*